UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES ROY KARKLIN,

          Plaintiff,

v.

O'BELL WINN, et al.,

          Defendants.

Case No. 2:22-cv-11970
District Judge Laurie J. Michelson
Magistrate Judge Anthony P. Patti

_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY
JUDGMENT ON THE BASIS OF EXHAUSTION (ECF NO. 23)**

**I.     RECOMMENDATION**: The Court should **GRANT** Defendants' motion to

dismiss and for summary judgment. (ECF No. 23.)

**II.    REPORT:**

    **A.    Background**

    Plaintiff James Karklin, a state prisoner, initiated this action August 23,

2022, against the Michigan Department of Corrections ("MDOC") and seven other

defendants asserting claims under 42 U.S.C. § 1983 for alleged violations of his

Eighth Amendment rights.  Specifically, he challenges the procedures in place at

the Saginaw Correctional Facility ("SCF") designed to reduce and prevent the

spread of COVID-19.  (ECF No. 1, PageID.3-6.)   Plaintiff contends that due to

Defendants' constitutionally deficient safety measures, he contracted COVID-19 twice, first in January 2021, and then in January 2022. (*Id*. at PageID.6.) He details that his first contraction occurred in January 2021, which resulted in various ailments, including weight gain, disorientation, slipping in and out of consciousness, and eventually being admitted to Ascension St. Mary's Hospital for three weeks. (*Id.* at PageID.6.) While at Ascension his glucose level allegedly rose to 900 and he went into a diabetic coma for 10 days. (*Id.* at PageID.6-7.) Plaintiff further claims that upon being released from the hospital, he was "forced to pull himself up into the transport van still in shackles, belly chain, and cuffs" whereupon "[h]e fell backwards on the frozen ground hitting his head." (*Id.* at PageID.7.)

Following his first bout of COVID-19, Plaintiff asserts that his vitals were not adequately monitored, including and especially his glucose levels, and that he continues to struggle with "long haul COVID-19." (*Id.*) According to the complaint, SCF was "chronically short staffed" during the pandemic, which resulted in inadequate medical care being provided. (*Id.*) He contends that Defendants' failure to protect, prevent, and practice the protocols on the MDOC website, combined with inadequate testing, personal protective equipment and cleaning, resulted in Plaintiff contracting COVID-19 twice. (*Id.* at PageID.8.)

Plaintiff filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment right against cruel and unusual punishment.  (*Id*., PageID.1-3.)  Plaintiff named eight Defendants: the MDOC, Director of MDOC Heidi Washington, previous warden of SCF O'Bell Winn, current warden of SCF Gary Miniard, Assistant Warden of Housing and Programs at SCF Carroll Walker, Corrections Officer Schwartz and an unknown officer John Doe.  (*Id.*, PageID.1-2.)  On January 31, 2023, the matter was referred to me "for all pretrial proceedings, including a hearing and determination of all non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)."  (ECF No. 13, PageID.54.)

On March 21, 2023, Defendants filed a motion to dismiss and for summary judgment, arguing that Plaintiff failed to state a claim under 42 U.S.C. § 1983 because he failed to allege personal involvement by Defendants Winn, Miniard, Walker, Bush, or Washington and failed to properly exhaust his administrative remedies against all Defendants.  (ECF No. 23.)  Plaintiff filed a response (ECF No. 27), Defendants filed a reply (ECF 27), and then Plaintiff filed a motion for leave to file a sur-reply (ECF No. 30).  The motion to file a sur-reply was denied, but his request found therein to dismiss certain Defendants was granted.  (ECF No. 31.)  Specifically, the Court granted Plaintiff's request and dismissed Defendants

Winn, Washington, Bush, MDOC, Schwartz, and the unknown officer John Doe.

(ECF No. 31 at PageID.173).  Thus, the only two remaining Defendants in this

action are Defendants Walker and Miniard.

### B.   Instant Motion

Defendants make two arguments in their motion to dismiss or for summary

judgment.  First, they argue that Plaintiff's complaint fails to make sufficient

allegations of personal involvement against them.  Defendants assert that liability

under 42 U.S.C. § 1983 must be based on more than *respondeat superior* (ECF

No. 23, PageID.83) or a mere failure to act (*id.* at PageID.84), and that Plaintiff's

complaint wholly fails to make any individual, particularized allegations against

the Defendants, but instead just refers to their collective actions as "Defendants"

(*id.* at PageID.85).  Second, Defendants argue that Plaintiff failed to exhaust any

of his claims against the any of the MDOC defendants and they are entitled to

summary judgment on that basis. (*Id.* at PageID.93.)

### C.   Discussion

#### 1.   Rule 12

When deciding a motion to dismiss under this Fed. R. Civ. P. 12, the Court

must "construe the complaint in the light most favorable to plaintiff and accept all

allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To

survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim

need not contain "detailed factual allegations," but it must contain more than

"labels and conclusions" or "a formulaic recitation of the elements of a cause of

action"). Facial plausibility is established "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an

inference depends on a host of considerations, including common sense and the

strength of competing explanations for the defendant's conduct." *16630 Southfield*

*Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims

that were never presented . . . nor may courts construct the Plaintiff's legal

arguments for him. Neither may the Court 'conjure up unpled allegations[.]'"

*Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).[1]

Plaintiff's claims are based on the Eighth Amendment.  (ECF No.

1PageID.3, 5.)  "A prison official's 'deliberate indifference' to a substantial risk of

serious harm to an inmate violates the Eighth Amendment."  *Farmer v. Brennan*,

511 U.S. 825, 828 (1994).  "The Constitution does not mandate comfortable

prisons, but neither does it permit inhumane ones, and it is now settled that the

treatment a prisoner receives in prison and the conditions under which he is

confined are subject to scrutiny under the Eighth Amendment[.]"  *Farmer*, 511

U.S. at 832 (internal and external quotations and citations omitted).

### a.    Objective

"The Eighth Amendment's deliberate indifference framework includes both

an objective and subjective prong."  *Wilson v. Williams*, 961 F.3d 829, 839 (6th

Cir. 2020) (citing *Farmer*, 511 U.S. at 834 (1994)).  "In assessing the objective

prong, we ask whether petitioners have provided evidence that they are

'incarcerated under conditions posing a substantial risk of serious harm.'"  *Wilson*,

961 F.3d at 840 (quoting *Farmer*, 511 U.S. at 834).  The Sixth Circuit has

---

[1] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

addressed this question in a correctional facility environment where inmates sought

"to obtain release from custody to limit their exposure to the COVID-19 virus[,]"

*Wilson*, 961 F.3d at 832-833, as follows:

> The COVID-19 virus creates a substantial risk of serious harm leading
> to pneumonia, respiratory failure, or death. The BOP acknowledges
> that "[t]he health risks posed by COVID-19 [sic] are significant."
> CA6 R. 35, Appellant Br., PageID 42. The infection and fatality rates
> at Elkton have borne out the serious risk of COVID-19, despite the
> BOP's efforts. The transmissibility of the COVID-19 virus in
> conjunction with Elkton's dormitory-style housing—which places
> inmates within feet of each other—and the medically-vulnerable
> subclass's health risks, presents a substantial risk that petitioners at
> Elkton will be infected with COVID-19 and have serious health
> effects as a result, including, and up to, death.

*Wilson*, 961 F.3d at 840.  Thus, regarding the dangers posed by COVID-19, the

objective prong of the Eighth Amendment is satisfied because Plaintiff was

incarcerated under conditions posing a substantial risk of serious harm.

### b.    Subjective

With respect to the subjective prong, however, the Court should find that

Plaintiff's complaint fails to sufficiently allege that the remaining Defendants were

deliberately indifferent to the serious risk of harm presented by COVID-19.

*Wilson*, 961 F.3d at 840.  As the Sixth Circuit explains:

> Under the subjective prong, an official must know[] of and disregard[]
> an excessive risk to inmate health or safety.  [I]t is enough that the
> official acted or failed to act despite his knowledge of a substantial
> risk of serious harm.  It is, indeed, fair to say that acting or failing to
> act with deliberate indifference to a substantial risk of serious harm to
> a prisoner is the equivalent of recklessly disregarding that risk.

> [P]rison officials who actually knew of a substantial risk to inmate
> health or safety may be found free from liability if they responded
> reasonably to the risk, even if the harm ultimately was not averted.

*Wilson*, 961 F.3d at 840 (internal quotations and citations to *Farmer v. Brennan*,

511 U.S. 825, 836, 837, 842, 844 (1994) omitted).

"Under § 1983, there is no respondeat superior or vicarious liability*."*

*Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir.2013).  "When suing an

individual actor . . . for constitutional violations under § 1983, a plaintiff must

demonstrate that the actor 'directly participated' in the alleged misconduct, at least

by encouraging, implicitly authorizing, approving or knowingly acquiescing in the

misconduct, if not carrying it out himself." *Id.*   Indeed, "it is particularly important

in such circumstances that the complaint make clear exactly who is alleged to have

done what to whom, to provide each individual with fair notice as to the basis of

the claims against him or her, as distinguished from collective allegations against

the state." *Jack-Bey v. Michigan Dep't of Corr.*, No. 1:13CV131, 2014 WL

1255910, at *5 (W.D. Mich. Mar. 26, 2014) (*quoting Robbins v. Oklahoma*, 519

F.3d 1242, 1250 (10th Cir.2008) (emphasis omitted)).

Defendants argue that Plaintiff's complaint fails to articulate specific

allegations with respect to each defendant's personal involvement in the alleged

constitutional deprivation.  (ECF No. 23, PageID.82-83.)  Indeed, Plaintiff's

complaint is devoid of any mention of each specific defendant's name or personal

action, referring to them collectively as "Defendants."  Although "using collective references is not an impermissible pleading form *per se*[,]" *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1162 (S.D. Fla. 2019), on the issue of individual involvement, "it is insufficient to make generic or blanket allegations pertaining to 'defendants' or allegations lumping together individual defendants[,]" and "mere citation to each individual defendant's job description—without an accompanying allegation showing how each defendant failed to comply with his or her job description—is insufficient." *Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021) (Goldsmith, J.).  *Compare Kesterson v. Moritsugu*, No. 96-5898, 1998 WL 321008, at *7 (6th Cir. June 3, 1998) ("although he subsequently references the defendants collectively, construing his pro se complaint liberally as the case law requires, reading the substance of each allegation in connection with a reference to ¶¶ 6-10[,]" where Plaintiff "describes who each defendant is and why he is suing that defendant[,]" provides each defendant with "notice of his alleged wrongdoing sufficient to satisfy Rule 8(a)(2).").  In this matter, Plaintiff's use of " the defendants" in the collective (*see* ECF No. 1, PageID. 2-9) does not provide Defendants Walker and Miniard with sufficient "notice of his [or her] alleged wrongdoing" and, thus, these particular allegations – alone – do not state a claim against them upon which relief may be granted.  *See Frazier v. Michigan*, 41 Fed. Appx. 762, 764 (6th Cir. 2002)

("Frazier's complaint contained no specific facts in support of his conclusory allegations that the defendants violated his constitutional and statutory rights. Moreover, Frazier failed to allege with any degree of specificity which of the named defendants were personally involved in or responsible for each of the alleged violations of his federal rights."); *see also Vartinelli v. Aramark Corr. Servs., LLC,* No. 18-CV-10964, 2019 WL 1402653, at *8 (E.D. Mich. Mar. 28, 2019), *aff'd*, 796 F. App'x 867 (6th Cir. 2019) ("Plaintiffs' Complaint throughout speaks collectively of the conduct of the "Defendants" and there are no allegations specifically related to any personal involvement of any of the individual Defendants" . . . [but,] '[i]In order for liability to attach to any of these supervisors, Plaintiff must prove that they did more than play a passive role in the alleged violations or show mere tacit approval of the goings on. Plaintiff must show that the supervisors somehow encouraged or condoned the actions of their inferiors.'") (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006)).

Moreover, the Court should find that Plaintiff's allegations that Defendants' COVID policies were inadequate are insufficient to state a claim under the Eighth Amendment.  Defendants persuasively point to the Western District's decision in *Robinson v. Hus*, No. 2:21-cv-71, 2021 WL 1884541, at *6-*8 (W.D. Mich. May 11, 2021), which took judicial notice of the measures that MDOC had imposed in response to the COVID-19 pandemic and found that "[c]learly, the MDOC has

taken extensive steps to address the risk of COVID-19 to inmates statewide." *Id.* at \*10.  The Sixth Circuit has found that such efforts "demonstrate the opposite of a disregard of a serious health risk." *Wilson v. Williams*, 961 F.3d 829, 841 (6th Cir. 2020).  Indeed, as in this case, "[a]n inmate's 'disagreement with the testing and treatment he has received . . . does not rise to the level of an Eighth Amendment violation.'" *Rhinehart v. Scutt*, 894 F.3d 721, 740 (6th Cir. 2018) (quoting *Dodson v. Wilkinson*, 304 F. App'x 434, 440 (6th Cir. 2008)).

Finally, to the extent Plaintiff argues that Defendants should have adopted certain, specific COVID-19 policies, or applied them in a different manner, again Plaintiff does not allege a sufficiently culpable state of mind.  *See Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at \*3 (6th Cir. Oct. 14, 2021) (Plaintiff's "complaint does not allege, for example, that KCF [Kinross Correctional Facility] had enough physical space to implement social distancing, and that the defendants deliberately chose not to use that space.") (footnote omitted); *Winburn v. Nagy*, No. 2:20-CV-11145, 2021 WL 5822097, at \*5 (E.D. Mich. Nov. 19, 2021) (Patti, M.J.) (allegations that Defendants "opened a COVID-19 unit at JCF and use one HUM – allegedly without protective gear – to serve both healthy and infected prisoners in an effort to save money, do not describe their individual acts or involvement."), *report and recommendation adopted*, No. 20-CV-11145, 2021 WL 5798032 (E.D. Mich. Dec. 7, 2021) (Goldsmith, J.); and,

*Crawford v. Washington*, No. 4:17-CV-11423, 2017 WL 8810687, at *8 (E.D.

Mich. Nov. 7, 2017) (Patti, M.J.) ("Plaintiff has not alleged that Defendant

Washington made a deliberate choice to follow a course of inaction from among

various alternatives, and was correspondingly indifferent to the rights of HCV

[hepatitis C virus] patients in the MDOC.") (internal quotations omitted), *report*

*and recommendation adopted*, No. CV 17-11423, 2018 WL 747706 (E.D. Mich.

Feb. 7, 2018) (Parker, J.).  (ECF No. 22, PageID.103-104.)  As discussed above,

Plaintiff's complaint fails to set forth specific allegations with respect to

Defendants Walker and Miniard and thus it similarly fails to allege a sufficiently

culpable state of mind that they engaged in a deliberate course of action which was

indifferent to a serious risk of harm.

### 2.    Rule 56

Defendants also argue that Plaintiff did not exhaust any claims against the

MDOC Defendants (namely, the two remaining MDOC Defendants, Walker and

Miniard).  (ECF No. 23, PageID.93.)

Under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e *et seq*.,

a prisoner may not bring an action "with respect to prison conditions under section

1983 of this title, or any other Federal law . . . until such administrative remedies

as are available are exhausted."  42 U.S.C. § 1997e(a).  Congress enacted the

provision to address the "outsized share" of prisoner litigation filings and to ensure

that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits[.]" *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotation marks and citation omitted).

The Supreme Court has held that "failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216.  As such, defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012) ("A PLRA defendant bears the burden of proving that a PLRA plaintiff has not exhausted his administrative remedies.").

 "Once an affirmative defense is asserted, it may be adjudicated at any point in the development of a lawsuit that the rules of procedure allow. As the *Jones* Court noted, because a plaintiff need not anticipate or plead around an exhaustion defense, that defense usually may not be addressed in a motion under Rule 12(b)(6) for failure to state a claim." *Anderson v. Jutzy*, 175 F. Supp. 3d 781, 786

(E.D. Mich. 2016) (Lawson, J., adopting in part report and recommendation of
Whalen, M.J.) (citing *Jones*, 549 U.S. at 215).  To the extent the record permits,
the Court addresses whether a prisoner has exhausted administrative remedies
under Federal Rule of Civil Procedure 56.  *See Albino v. Baca*, 747 F.3d 1162,
1170 (9th Cir. 2014) (en banc); *see also Melton v. Michigan Corr. Comm'n,* No.
07–15480, 2009 WL 722688, at *6 (E.D. Mich. Mar. 17, 2009) (resolving failure
to exhaust administrative remedies in a motion for summary judgment). "The
summary judgment motion is especially well suited to pretrial adjudication of an
exhaustion defense, because proof of lack of exhaustion generally requires resort to
matters outside the pleadings, such as affidavits or documentary evidence."
*Anderson*, 175 F. Supp. 3d at 787.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary
judgment if the movant shows that there is no genuine dispute as to any material
fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.
56(a).  A fact is material if it might affect the outcome of the case under governing
law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The Court
"views the evidence, all facts, and any inferences that may be drawn from the facts
in the light most favorable to the nonmoving party."  *Pure Tech Sys., Inc. v. Mt.
Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

14

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Moreover, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack v. Damon Corp.*, 434 F.3d 810, 814 (6th Cir. 2006) (internal quotations and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp. v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994). In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming

grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

Here, Defendants have presented evidence that Plaintiff pursued only one grievance through Step III, SRF-653, at the point when Plaintiff filed the Complaint. (See ECF No. 23, PageID.107-113, Ex. 2.) However, SRF-653 was not fully exhausted when Plaintiff filed the Complaint, because SRF-653 was completed two days *after* the Complaint was filed. (*See* ECF No.23, PageID.93.) Moreover, SRF-653 was rejected at Step I of the process as untimely, and that rejection was affirmed through Step III. *Id.* Plaintiff does not materially dispute that his grievance was both untimely and not fully exhausted at the time he filed the Complaint. Instead, he argues that it is not "fair or effective" to require exhaustion because "most prisoners are illiterate" and are unable to determine "what a grievable issue is until after the deadline for filling." (ECF No. 27, PageID.139.)

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id*. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of

proper exhaustion.").  Thus, the PLRA requires not only exhaustion, but *proper* exhaustion.  *See Woodford*, 548 U.S. at 92 (concluding that if a prisoner fails to file a procedurally proper grievance, he fails to satisfy the PLRA's exhaustion requirement).

Defendants have met their initial burden of identifying evidence that Plaintiff did not properly exhaust his grievance before initiating this action.  And Plaintiff has not produced any evidence to the contrary.  *See Wrench LLC*, 256 F.3d at 453 ("Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'") (citation omitted).  As such, the Court should grant Defendants' motion for summary judgment on the issue of exhaustion.

### D.      Conclusion

For the reasons set forth in greater detail above, the Court should **GRANT** Defendants' motion to dismiss and for summary judgment (ECF No. 23) and enter judgment for the two remaining Defendants, Walker and Miniard.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas*

*v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  November 27, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE